### UNITED STATES v. 1935 FORD COUPE, ENGINE NO. 18—1654854.
### No. 504.

District Court, D. Maine, S. D.

Dec. 18, 1936.

332

John D. Clifford, Jr., U. S. Atty., and Edward J. Harrigan, Asst. U. S. Atty., both of Portland, Me.

Francis W. Sullivan, of Portland, Me., for claimant.

PETERS, District Judge.

Hearing was had before the court upon the claim of General Motors Acceptance Corporation to a certain Ford coupe automobile which has been declared forfeited under Rev.St. § 3450 (26 U.S.C.A. § 1441), having been seized for concealing and transporting tax-unpaid illicit liquors in fraud of the revenue laws.

I find from the evidence that the claim is founded upon a conditional sale contract executed in 1935 by one Israel Mack with the Couri Motor Company, engaged in the business of selling automobiles, hereinafter referred to as the dealer.

This contract for a valuable consideration was sold to the claimant soon after its date, and there is now due upon it something like $178.

It seems that Mack, who had no record or reputation for violation of the liquor laws, was the keeper of a "beer parlor," so called, and on occasion, as he testified, found it convenient to have the use of a car to send to their homes patrons of his parlor who might require transportation. In conjunction with one Navarro, a well-known bootlegger who is now serving a term in the penitentiary for violation of the internal revenue laws involving liquor, and who needed a car in his business, Mack and Navarro undertook the purchase of a car. The car in question was selected at the dealer's establishment by Mack and two other men whose identity has not been established and whose names Mack, whose memory is somewhat faulty, does not recall. The down payment on the car was made, $50 by Mack and $150 by Navarro. Upon the payment of this money and the execution of the note, the car was delivered to Mack, or to Mack and the other unknown persons, and subsequently registered for the year 1935 in the name of still another person who has not been identified and whose address as given was fictitious. For 1936 the car was registered in the name of Mack. This was done by Navarro without knowledge of Mack, as he claims.

It seems that Mack could not drive a car and never had a license to drive. The car was used principally by Navarro for the illegal concealment and transportation of non-tax-paid liquors until the seizure.

It developed that local police officers, observing that Navarro was using the car in his illegal business, notified Mack, in whose name they found the car registered, that it was being so used, some time before the seizure, and Mack endeavored to have Navarro change the registration of the car, but without success.

Several payments of $25 each were made on the note held by the claimant, of which Navarro usually paid $20 and Mack $5. Navarro made payments personally. Mack knew that he was put forward as the ostensible sole purchaser, because Navarro thought he could not buy a car and negotiate a mortgage note upon it on account of his bad record and reputation.

It is clear that the principal owner, as well as user of the car, was Navarro, and that one object of the purchase was to enable Navarro to carry on activities in fraud of the revenue of the government.

There is no doubt that the claimant acquired its interest in the contract of sale in good faith and that it at no time had any knowledge or reason to believe that the car would be or was being used in violation of the liquor laws, except such as might be inferred from the fact that Navarro made some payments on the conditional sale note; and as to that, there is no evidence that Navarro or his reputation was known to the claimant. Before the paper signed by Mack was purchased by the claimant, its agents made inquiries as to Mack's reputation, which were satisfactorily answered. No inquiries were made as to Navarro.

In a large view of the matter it may be said that the question is whether, under the circumstances recited, the rights of third parties should be given preference to the interests of the government in enforcing the revenue laws.

The claimant contends that it has met the conditions of title 27 U.S.C.A. § 40a (b), (1), (2), and (3), and for that reason is entitled to return of the car.

Admitting for the purpose of the discussion that the claimant has met those conditions of the Act of August 27, 1935, I do not think it follows that there must be a return.

The act referred to provides that when there has been a decree of forfeiture of a vehicle under the revenue laws relating to liquors, "the court shall have exclusive jurisdiction to remit or mitigate the forfeiture." It also provides that under certain circumstances it shall not remit or mitigate. As expressed by the act, "the court shall not allow the claim of any claimant for remission or mitigation unless and until he proves" the good faith, lack of knowledge, and the making of inquiries referred to above and in the act as (b), (1), (2), and (3).

Proof that the circumstances preventing relief by the court are not present does not of itself compel a remission. The act must be considered in connection with its background and purpose. For many years the interests of innocent persons were not saved in cases of forfeiture under section 3450. United States v. One Ford Coupe, 272 U.S. 321, 47 S.Ct. 154, 71 L.Ed. 279, 47 A.L.R. 1025.

The interests of the government in enforcing collection of the revenue upon which its existence depends, were considered paramount to the rights of private citizens, no matter how innocent, and regardless of the hardship resulting.

I do not believe that the policy of Congress has changed to the extent of preferring private interests to the integrity of the revenue collecting machinery, or that the act of 1935 was intended to have any such effect. I think rather that the court was given a limited discretion in relieving from forfeitures which should be exercised in favor of innocent persons, with due regard for the interests of the government in collecting the revenue.

Certainly to remit the forfeiture in this case would not only ratify a scheme to defraud the government, but would furnish proposed violators of the law with a simple formula for easily obtaining one of the instrumentalities of their trade.

There are many cases where the unanticipated illegal use of a car subsequent to its innocent purchase call for relief from forfeiture, which can now be had under the terms of the new act. Where the immunization of the vehicle against forfeiture was a part of the unlawful plan at its inception, the court would be simply playing its expected role in ordering a release.

In a case like this the interests of citizens must be subordinated to the exigencies of government, as for many years heretofore.

An order will be entered denying the claim.