**UNITED STATES v. ONE 1936 STUDEBAKER SEDAN, ENGINE NO. D-74084, SERIAL NO. 5850480, et al.**

**No. 13894.**

District Court, W. D. Washington, N. D.

Dec. 6, 1937.

500

J. Charles Dennis, U. S. Atty., and G. D. Hile, Asst. U. S. Atty., both of Seattle, Wash., for the United States.

Eggerman & Rosling, of Seattle, Wash., for claimants.

NETERER, District Judge.

The libelant upon information seeks to forfeit 1936 Studebaker sedan, it having been seized while being used as a depository for 25 gallons of distilled spirits upon which there was due certain imposed taxes by section 600(a) (3,4) of the Revenue Act 1918, as amended by section 2 of the Liquor Taxing Act of 1934 (26 U.S.C.A. § 1150(a) (1); that the distilled spirits were removed, concealed, and deposited in said automobile with intent to defraud the United States of said taxes.

Claim is made by the Bee Hive Auto Service Company, Inc., claiming purchase from George B. Wallace Company, an Oregon corporation, as grantors of said auto to the Bee Hive Auto Service Company, Inc. Claim also is made by the C. I. T. corporation, as holder of the chattel mortgage upon said auto to secure the purchase price and payment thereof, which chattel mortgage was executed by the Bee Hive Auto Service Company, Inc., to George B. Wallace Company in the sum of $2,441.24 and assigned together with a promissory note of the Bee Hive Auto Service Company, Inc., to the C. I. T. corporation. That the said C. I. T. corporation is the holder of said note and mortgage and a balance of $1,616.24 is unpaid. The said claimant at no time had actual knowledge or reason to believe that said auto was being or would be used in violation of the laws of the United States; that use of said auto in violation of law was in violation of the terms and conditions of the said mortgage; that the appraised value of said auto is $550. The mortgage covers two automobiles; the value of other is not shown.

The C. I. T. corporation at the time of the execution of the chattel mortgage and assignments thereof and all times subsequent knew that the Bee Hive Auto Service Company, Inc., was engaged in renting the automobiles to various persons under a "Drive-Yourself" business. It is also stipulated that the allegations of the libel are true and forfeiture may be decreed subject to the right of the C. I. T. corporation and other claimants to secure remission of forfeiture in accordance with 27 U.S.C.A. § 40a should the facts warrant.

It is further stipulated that libelant should not be foreclosed from contending that C. I. T. corporation was charged with constructive notice. The mortgage further stipulated that:

"Should said chattel be used for the bartering, storage and transportation of intoxicating liquor contrary to the provisions of the so-called Volstead Act or any provision or amendment thereof (if the automobile covered by this contract is seized for alleged violation of the National Prohibition Act or any like Federal or State Act you shall be deemed the "owner" thereof for the purpose of obtaining possession of the car under bond and you shall have the sole right so to do) or contrary to any other statute or ordinance respecting intoxicating liquors."

The record shows that the mortgage was executed May 15, 1936, and the last payment was due May 15, 1937. Arrest was made March 11, 1937. The chattel mortgage attached to the petition for remission, among other things, provides:

"Payments to be made at the rate of three (3¢) cents per mile (operating miles) per car * * *"

The C. I. T. corporation is made a party to the chattel mortgage by acceptance of the mortgage by express stipulation in the mortgage of the *intention* to assign the same to it, and admission thereby that the convenants of the mortgage inure to it; it is named in the chattel mortgage as assignee, and is the acceptor of the express assignment moving from the mortgagor to it, and bears the relation of a principal to the chattel mortgage and is therefore a third party to it, etc.

It is also stipulated that George B. Wallace Company made an investigation of the moral character and general reputation and financial responsibility of the Bee Hive Auto Service Company, Inc., at the time of the execution of the mortgage, and from said investigation there was no indication that said auto would be used in violation of any of the laws of the United States or the State of Washington; that the C. I. T. corporation acquired its interest in said auto in good faith; that it has at no time had knowledge or reason to believe that the auto seized would be used in violation of the laws of the United States or the State of Washington; that it did not know said

car was in the possession of Anderson at the time of its unlawful employment and seizure.

All claimants knew the auto in issue was to be employed in a "Drive-Yourself" service and continuous multiplicity of bailments with a system or plan appearing to have been devised to ascertain information of the character and responsibility of the bailee-person hiring the auto. The following is a copy:

"Application for small deposit privilege

| Date | Age | Married | Occupation | How long in city |
|---|---|---|---|---|
| 3-11-37 | 35 | No | | 3 yrs. |

Permanent home address          Tel. No.

5931 48 South West

Employed now with      How long    Tel.No.

Previously employed.      How long    Tel.No.

In event of accident notify

Name

Mrs. Anderson
5931 48th S. W.

References

Name
1—Seattle—U*—Drive
2—
3—
Sign here

O. K. by ——————————————————"

Upon application for an auto the party should be requested to fill in blanks, sign the same, and asked whether he had driver's license and to produce the same. The application was not filled. No further investigation was made. The method was followed for more than two years. In the instant case, the bailee of the car had been arrested two or three days prior to this arrest and seizure for the violation of the liquor laws of the United States; his driver's license was taken from him and was in the possession of the revenue enforcing officer. The license was not exhibited to the bailor, but the bailee stated it was at his home. The application shows he was not married. No inquiry was made of any officer or persons before or after of the bailee's prior conduct, business, or associations, or his status or residence verified.

█ The C. I. T. corporation is the alter ego of Wallace Company.

By the recitation in the chattel mortgage, "The said mortgagor * * * admits notice of the intended assignment of this mortgage to C. I. T. corporation, and hereby covenants .* * * all payments shall be made to it * * * that all claims * * * against the mortgagee shall be independent of any action by C. I. T. corporation against mortgagor * * *"

The C. I. T. corporation by acceptance of this status is subrogated to the relation of principal and is not within the status of innocent purchaser without notice. It acquired the rights of Wallace Company in the chattel mortgage and by the same token assumed its obligations.

To be entitled to remission and/or mitigation under section 40a(b) (3), the C. I. T. corporation must show that at the time it acquired its interest, and at the time the bailee under the "Drive-Yourself" contract "obtained the auto, it by its officers or agents made inquiry at * * * the headquarters of the * * * principal Federal Internal Revenue officer engaged in the enforcement of the liquor laws or * * * Federal law enforcement officer of the locality in which such person acquired his right under such contract. * * *"

█ Wallace Company made inquiry at the time the chattel mortgage was made concerning the mortgagor the Bee Hive Auto Service Company, Inc., and adopted a plan to regulate the "for hire policy." The C. I. T. corporation made no inquiry then or any time hereafter. The inquiry made at the inception of the mortgage will inure to the C. I. T. corporation, but such inquiry does not absolve it from reasonable vigilance during the continuance of the "Drive-Yourself" relation. The plan or system adopted was not followed, all of which was known to Wallace Company, and the C. I. T. corporation must be charged with such knowledge. If inquiry had been made of the local federal enforcing officer, it would have been advised that the intended bailee was then under arrest enlarged on bail pending trial; and that his driver's license was in the officer's possession.

It defies common sense to suppose that the Congress intended in enacting the provisions for the forfeiture of vehicles that *no* obligation was imposed upon large auto dealers or large companies financing such dealers, because it burdens them to follow such auto and prevent the purchaser from violating the revenue laws at the risk of forfeiture. (Italics supplied.)

502

This case is distinguished from cases where the purchaser obtains an auto for private use; in such case there is only one change of possession and control for use of the auto and one inquiry may suffice. In the instant case payment of the chattel mortgage is based upon mileage use of the auto, and under a constantly changing bailment, and the increase of the mileage necessarily accelerates the payments. No inquiry was made by the C. I. T. corporation at any time from the execution of the mortgage May 15, 1936, the approximate date of the assignment (it being named in the body of the mortgage as the assignee), and to the time of the arrest of the bailee and seizure of the auto March 11, 1937 (ten months). Inquiry must be made for each bailment by claimant or a reasonable policy adopted of a plan or system by which inquiries are made and the claimant therewith charged to exercise reasonable diligence to the execution of such plan. The Congress did not intend that small offenders should be scrutinized with a microscope and large ones taken as a matter of course; nor does the phrase by Thos. R. Marshall, former Vice President of the United States, "In Hoosier Salad," page 271, "There is quite a current belief that if a man steals much money he can go Scot-free, that it is only a moderate minded thief who ever gets into trouble," obtain. The Congress measured justice by one yardstock, and within this measure is comprehended "The high and the low, the rich and the poor," the great companies and the small dealers. Each and all must exercise reasonable care, make reasonable diligent inquiry; and the degree of care is measured by the exigency of the case—in this claimant failed altogether. To hold otherwise the court would by autocratic assumption of power repeal the plain provision of the act of the Congress, and place it within the power of large companies by fiction and subterfuge to engage conduct violative of the general welfare. This law obviously was made for the common good. There will no doubt always be difference of opinion as to the border line where individual liberties may menace the well being for the common good. In this case there can be no difference.

The claims for remission and/or mitigation of forfeiture is denied.

Libelant's citations: United States v. One 1935 Dodge Rack-body Truck (C.C. A.) 88 F.2d 613; C. I. T. Corporation v. United States 89 F.2d 977 (C.C.A.4);

United States v. One Ford Coach Automobile (D.C.) 20 F.Supp. 44; United States v. One 1935 Ford Coupe (D.C.) 17 F.Supp. 331; United States v. One Plymouth Coupe (D.C.) 14 F.Supp. 610; United States v. One 1935 Chevrolet Coupe (D.C.) 13 F. Supp. 986; United States v. Stowell, 133 U.S. 1 at page 12, 10 S.Ct. 244, 33 L.Ed. 555; United States v. Ryan, 284 U.S. 167, at page 172, 52 S.Ct. 65, 67, 76 L.Ed. 224; Federal Motor Finance v. United States, 88 F.2d 90 (C.C.A.8).

Claimants' citations: Universal Credit Co. v. United States, 91 F.2d 388 (C.C.A.6); Wilson Motor Co. v. United States, 84 F.2d 630 (C.C.A.9); C. I. T. Corporation v. United States, 89 F.2d 977 (C.C.A.4).