**UNITED STATES**
v.
**ONE 1950–51 FORD VAN TYPE ONE AND ONE–HALF TON TRUCK.**
**Civ. A. No. 1809.**

United States District Court
E. D. Virginia, Richmond Division.

Jan. 19, 1954.

---

R. R. Ryder, Asst. U. S. Atty., for United States.

T. Nelson Parker, Richmond, Va., for claimant, U-Drive-It Co.

WILKIN, District Judge.

This case was heard on the libel, asking for decree of forfeiture, and the answer and petition, asking for an order of remission to the owner of the libeled truck, U-Drive-It Company, the evidence and argument. The evidence that the car was used to transport illicit liquor was undisputed and the right of forfeiture was conceded.

The prayer for remission was based on the contention (1) that Section 3617 (b) (3) of Title 18 does not apply to companies or persons engaged in the business of renting automobiles to self-drivers, such as the U-Drive-It Company in this case; and the further contention (2) that the claimant-owner had done all that was required of it in the circumstances to entitle it to recover.

Subsection or paragraph (b) of Section 3617 states the "Conditions precedent to remission or mitigation". There are three things the claimant must prove before the court can grant remission: (1) that he has an interest as owner or otherwise in the vehicle; (2) that he had no knowledge that the vehicle would be used in violation of laws relating to liquor; and (3)

"if it appears that the interest asserted by the claimant arises out of or is in any way subject to any contract or agreement under which any person having a record or reputation for violating laws of the United States or of any State relating to liquor has a right with respect to such vehicle or aircraft, that, before such claimant acquired his interest, or such other person acquired his right under such contract or agreement, whichever occurred later, the claimant, his officer or agent, was informed in answer to his inquiry, at the headquarters of the sheriff, chief of police, principal Federal in-

ternal-revenue officer engaged in the enforcement of the liquor laws, or other principal local or Federal law-enforcement officer of the locality in which such other person acquired his right under such contract or agreement, of the locality in which such other person then resided, and of each locality in which the claimant has made any other inquiry as to the character or financial standing of such other person, that such other person had no such record or reputation."

It is conceded that the claimant has complied with the first two conditions; i. e., that it is the owner of the libeled truck and that it had no knowledge that it would be used to violate the liquor laws. As to the third condition, the evidence and admissions reveal the following facts,—

The claimant, as its name indicates, is, and has been for 25 years, engaged in renting automobiles to be driven by the renter or user. On August 8, 1953, at about six o'clock in the evening, John Pleasants applied to the night manager of U-Drive-It for a truck, saying he wanted it for the purpose of moving household furniture, and would return it by nine o'clock. The manager asked for and examined Pleasants' driver's license, found no record of law violations, and asked where Pleasants worked. Pleasants said he worked for his father who owned a cleaning and pressing business on Hancock Avenue. The manager knew the place and proposed calling, but was told by Pleasants, "There is nobody there, my father has gone and I have locked the place up myself."

The manager checked the company's files, where it keeps a record of law violators and unsatisfactory customers, and finding nothing against John Pleasants, informed him that the company did not rent automobiles for any unlawful purpose, accepted a cash deposit, and rented Pleasants the truck.

It is the contention of counsel for the United States that in these circumstances the claimant is not entitled to remis-sion because it did not inquire as to the record or reputation of Pleasants "at the headquarters of the sheriff, chief of police, principal Federal internal-revenue officer engaged in the enforcement of the liquor laws, or other principal local or Federal law-enforcement officer of the locality in which such other person acquired his right under such contract or agreement, of the locality in which such other person then resided, and of each locality in which the claimant has made any other inquiry as to the character or financial standing of such other person," as required by the statute. The testimony disclosed that John Pleasants had been convicted of manufacturing illegal whiskey in King William County in September, 1951, and had been seen "hauling sugar and stuff" a few days before his arrest in this case. Federal officers engaged in the enforcement of the liquor laws said Pleasants had a reputation as well as a record as a liquor law violator.

Counsel for claimant contended it was impossible to make the inquiries mentioned at six o'clock in the evening. It was admitted by a government witness that the office of the Alcohol Tax Unit in Richmond was closed on Saturday, August 8th. And the Captain of Police, in charge of the enforcement of "prohibition and other vice laws" in Richmond, testified that if he had been asked on August 8th, he would have said that as far as he knew, Pleasants had no record or reputation for violating the law. The Sheriff of the City of Richmond, it was shown, is not charged with the enforcement of criminal laws, and would not have been in a position to know the reputation of Pleasants.

The claimant also offered evidence that in its twenty-five years of business it had never before had one of its automobiles libeled. The testimony was undisputed that it kept a card file and a book record of law violators. Such record was compiled from claimant's own experience and the experience of others in the same business, and periodically the claimant would have some person from the State

Police and the City Police and from the A. B. C. Board investigate its records and inform it if any of its customers had a criminal record or reputation as a liquor law violator. Counsel for the government very graciously and properly stipulated that the claimant had a good reputation and "that it had aided in enforcement work."

The president of the claimant explained that it kept up-to-date records of liquor law violations, but that it did not make financial or credit investigations of its customers, because in its business each customer wanted the automobile applied for immediately. He said it was not the practice of any one engaged in the renting of automobiles to make credit investigations.

■ In view of these facts two questions must be answered. (1) Does Section 3617 of Title 18 apply to a company engaged in the business of the claimant, U-Drive-It Company? Did the claimant do all that was required of it in order to obtain remission of forfeiture? The language of Sec. 3617 is so broad that it must be held to apply to those engaged in the business of the claimant in this case. A reasonable interpretation of the language so indicates, and other courts have so held. U. S. v. One 1936 Studebaker Sedan, D.C., 21 F.Supp. 499; U. S. v. One Chevrolet Sedan, D.C., 18 F.Supp. 799; U. S. v. Ford Truck, 3 Cir., 115 F.2d 864.

■ As to question (2) this court is constrained to hold that what the claimant did in this case was a reasonable compliance with the requirements imposed by Sec. 3617. In the light of the intent and purpose of Congress, this court is impelled to hold that the claimant had done all that it was possible for it to do if it were to continue in business. The language used indicates that the legislators had in mind finance companies and others who hold title to automobiles entrusted to the possession of others permanently, as long as the conditions of the contract are fulfilled.

Such legislative intent is indicated by the use of the term "financial standing". It is clearly indicated that the inquiry as to record and reputation should be made in connection with the inquiry as to financial standing. But the claimant in this case, and others engaged in a similar business, make no inquiry as to financial standing.

■ Furthermore, the language of the statute says merely that the inquiry as to record and reputation should be made "before such claimant acquired his interest, or such other person acquired his right"; it does not say how long before. The claimant in this case made periodic inquiry as to the record and reputation of its customers, and as to the local records of violations of the liquor laws. It tried to keep its files and records current. The very nature of its business made such practice necessary and justifiable. If the Congress had meant to alter the method of doing business by such companies as U-Drive-It, the law should have said so expressly. It is well settled that statutes imposing forfeitures are strictly construed and statutes designed to relieve from the rigors of forfeiture are liberally construed. 37 C.J.S., Forfeitures, § 4, p. 8. Forfeitures are never to be inferred from doubtful language.

If the interpretation of the law advocated by counsel for the United States should be enforced by the courts it might work a severe hardship in many cases. Suppose a man, after six o'clock in the evening, applied to U-Drive-It for an automobile and said he wished to drive to his mother's home several miles beyond Richmond, that his mother was critically ill and had sent for him; he would be told he would have to wait until the office of the Chief of Police or Alcohol Tax Unit opened the next morning and U-Drive-It had been informed that he had neither record or reputation as a liquor-law violator.

■ As was stated in the majority opinion in United States v. One 1936

Model Ford V–8, 307 U.S. 219–236, 59 S.Ct. 861, 870, 83 L.Ed. 1249, the provisions of the law "were intended for protection of the revenues, not to punish without fault." Those who administer the law should try to be ministers, "not of the letter, but of the spirit: for the letter killeth, but the spirit giveth life." It would be unjust to exact a forfeiture of this claimant who has striven to support the purpose of the law and who has such an excellent reputation for cooperation in enforcement work. Regardless of the literal phrasing of the statute, the judicial power vested by the Constitution in United States courts is sufficient to protect the rights guaranteed by the Fourth and Fifth Amendments. United States v. One 1936 Model Ford Coach, D.C., Syllabus 5, 58 F.Supp. 802, 803.

Order of remission will be entered.