### UNITED STATES v. ONE FORD COACH AUTOMOBILE (MOTOR NO. 18-2396048).

District Court, W. D. Virginia.
Aug. 18, 1937.

T. Warren Messick, of Roanoke, Va., for petitioner.

Joseph H. Chitwood, U. S. Atty., of Roanoke, Va., for United States.

PAUL, District Judge.

The Morris Plan Bank has filed its petition for remission of forfeiture of a Ford automobile seized by officers of the government while engaged in transporting ardent spirits upon which the tax had not been paid. The petitioner asserts an interest in the automobile by virtue of a conditional contract of sale and bases its right to a remission of forfeiture on the provisions of U.S.C.A., title 27, § 40a, being section 204 of the Act of August 27, 1935, known as the Liquor Law Repeal and Enforcement Act. The facts are not in dispute, a jury has been waived, and all matters of law and fact are submitted to the court.

The contentions of the petitioner appear to be: First, that under the facts shown in this case, the cited statute requires remission of the forfeiture. That the court has no discretion in the premises, but is compelled to remit the forfeiture where it appears that the lien was acquired in good faith, that petitioner had no knowledge or reason to believe that the vehicle was being used in violation of the law, and the owner had no reputation or record as a violator of the liquor laws. Second, that, even if the statute is not mandatory in requiring remission but vests a discretion in the court in that respect, the facts of the instant case are such as that that discretion should be exercised to grant the relief prayed for.

These contentions compel, first of all, a consideration of the purpose and effect of the statute which petitioner invokes and, after that, an application of the statute to the facts of this particular case.

The pertinent portion of the statute here involved is as follows:

"Whenever, in any proceeding in court for the forfeiture, under the internal-revenue laws, of any vehicle or aircraft seized for a violation of the internal-revenue laws relating to liquors, such forfeiture is de-

creed, the court shall have exclusive jurisdiction to remit or mitigate the forfeiture.

"In any such proceeding the court shall not allow the claim of any claimant for remission or mitigation unless and until he proves (1) that he has an interest in such vehicle or aircraft, as owner or otherwise, which he acquired in good faith, (2) that he had at no time any knowledge or reason to believe that it was being or would be used in the violation of laws of the United States or of any State relating to liquor, and (3) if it appears that the interest asserted by the claimant arises out of or is in any way subject to any contract or agreement under which any person having a record or reputation for violating laws of the United States or of any State relating to liquor has a right with respect to such vehicle or aircraft, that, before such claimant acquired his interest, or such other person acquired his right under such contract or agreement, whichever occurred later, the claimant, his officer or agent, was informed in answer to his inquiry, at the headquarters of the sheriff, chief of police, principal Federal internal-revenue officer engaged in the enforcement of the liquor laws, or other principal local or Federal law-enforcement officer of the locality in which such other person acquired his right under such contract or agreement, of the locality in which such other person then resided, and of each locality in which the claimant has made any other inquiry as to the character or financial standing of such other person, that such other person had no such record or reputation."

A consideration of the intent and effect of this statute may be aided by considering the conditions existing before its enactment and which it was intended to affect. Forfeiture of vehicles used in violation of the revenue laws is had under the well-known section 3450, Revised Statutes (26 U.S.C.A. § 1441), first enacted in 1866.

This statute (section 3450, Rev.St.) is absolute and unconditional in its provisions for forfeiture and recognizes no exceptions in favor of innocent owners or lienors. The unconditional nature of the provisions as to forfeiture has been pointed out in numerous cases. See Goldsmith, Jr.-Grant Co. v. United States, 254 U.S. 505, 41 S. Ct. 189, 65 L.Ed. 376, and cases there cited. The justification of this law as a matter of policy was found in the necessities of the government to prevent evasion of its laws for the collection of taxes. It is well rec-

ognized that the provisions of section 3450 have been a most effective weapon in the enforcement of the revenue laws.

It is true that under certain conditions remission or mitigation of forfeiture might be obtained from the Secretary of the Treasury. See title 19, § 1618, U.S.C., 46 Stat. 757, § 618 (19 U.S.C.A. § 1618), and title 26, § 1626, U.S.C., 45 Stat. 882, § 709 (26 U.S.C.A. § 1626). The granting of remission or mitigation was, however, discretionary with the Secretary and to be exercised upon such terms and conditions as he deemed reasonable and just.

Inasmuch as the courts were, prior to the passage of the statute now invoked, without power to remit or mitigate forfeiture, resort had to be made to the Secretary of the Treasury. As a result, the Treasury Department was besieged with such petitions by innocent or alleged innocent owners of seized vehicles. The Department was compelled to make an investigation into the facts, frequently with much delay, expense, and inconvenience where the seizure had occurred in a distant state. Valuable time of the Secretary of the Treasury was taken in passing on these cases, while members of Congress were annoyed by importunities to exercise influence on behalf of claimants. Out of this unsatisfactory situation, Congress thought it desirable that the power of remission or mitigation be intrusted to the courts where the libel was instituted and where all pertinent evidence could most conveniently be heard.

The legislative history of the statute now in question shows that at the first session of the 74th Congress there was introduced in the House of Representatives a bill providing for relief from forfeiture to be granted by the courts to any owner who should prove that the illegal use of the vehicle was without his knowledge or consent or to any lienor who should prove that his lien was acquired in good faith and that the lienor had no knowledge of such illegal use and no reason to believe the vehicle was being used, or would be used, illegally. If I understand correctly, the bill as proposed made the granting of relief mandatory in such cases.

This proposed statute was strongly opposed by the Treasury Department, which pointed out the obstacles which it would throw in the way of enforcing the revenue laws, and thereafter the present law embodying the views of the Treasury

Department was introduced in the Senate at the request of the Department and was enacted in lieu of the House bill. It may be assumed that the Treasury Department had no desire or intention of surrendering or weakening one of its most effective means for enforcing the revenue laws; that it never intended that the statute should do more than invest in the courts the same discretionary power to remit or mitigate that had been exercised by the Secretary of the Treasury. I think it may also be assumed that Congress intended to respond to the views of the tax-collecting agency of the government in this respect. In the report of the Senate Committee on the Judiciary, which recommended the passage of the act, is found the following explanation of the purposes of that portion of the statute here involved:

"Subsection (a) of section 204 [27 U. S.C.A. § 40a(a)] provides that in any court proceeding for the forfeiture under the internal-revenue laws of any vehicle or aircraft seized for a violation of the internal-revenue laws relating to liquor, the court shall, upon decree of forfeiture, have exclusive jurisdiction to remit or mitigate the forfeiture. At the present time, the court has authority only to decree the forfeiture, and remission or mitigation is dependent upon administrative action. Section 204 extends to the court which determines whether the vehicle or aircraft shall be forfeited by reason of having been used in the violation of internal-revenue laws relating to liquor, the power to determine whether the claim of any person having an interest in the vehicle or aircraft should be allowed after forfeiture."

Not only does the history and purpose of this legislation indicate that it was intended that the granting of remission or mitigation should be discretionary with the court, but the language of the statute indicates this same intention; subject to the condition that no relief shall be granted under any circumstances unless the claimant shall prove the existence of certain facts, as set out in paragraph (b) of section 204 (27 U.S.C.A. § 40a(b). Failure on the part of the claimant to meet the conditions of paragraph (b) is an absolute bar to the granting of any relief, but there is nothing to indicate that upon compliance with those conditions the court is compelled to grant relief. There is no language in the statute which sets forth any conditions under which the court shall remit or mitigate the forfeiture.

I interpret the statute to provide, in effect, that the court is without power to consider any remission or mitigation except upon the showing of certain conditions; but that when these conditions have been shown the court shall then determine whether, under all the facts shown, it is proper that some relief should be granted; and that this determination is a matter solely within the discretion of the court.

■ I do not believe it to have been the intention of Congress to make a sweeping change in the policy relating to forfeitures as based on section 3450, R.S. (26 U.S.C.A. § 1441), but to make provision for amelioration of its harshness in those cases where, in the opinion of the court, the interests of justice would be served by remission or mitigation of the forfeiture. The fact that power is given to "mitigate" indicates the exercise of discretion. To mitigate means "to make less severe; to alleviate; to diminish." It is something less than complete remission. Mitigation is a lessening to any extent, great or small; it may be anything between the limits of complete remission on the one hand and a denial of any relief on the other. And it necessarily implies the exercise of the judgment of the court as to what is proper under the facts of the particular case.

Being of opinion that the statute does not, under any circumstances, compel remission or mitigation of forfeiture, but leaves the exercise of this power discretionary with the court, it remains to be seen whether the facts here are such as that it seems proper to grant the relief asked. In consideration of this question, it is to be remembered that it involves not only the interest of the lienor but the broad interest of the government in its efforts to collect its revenues and to break up the traffic in illicit whisky.

■ The automobile in question was seized in the city of Roanoke on July 14, 1936, while transporting 40 gallons of illegal whisky. At the time it was being driven by a young man named Craighead, who testified that the car and whisky belonged to one E. W. Brizendine, familiarly known as "Mickey" Brizendine, who over a period of years has been one of the most notorious and persistent violators of the revenue laws in that community. Craighead was employed by Brizendine in the delivery of whisky.

Investigation showed that title to the automobile was registered in the name of

a man named Clyde L. Burch and had been purchased from the Fulton Motor Company, dealer in Ford cars, on May 18, 1936. At the time of the purchase Burch was accompanied to the dealer's place of business by Brizendine. The salesman who negotiated the sale says that he knew neither of the men at the time and that Burch seemed to be the man who was buying the car and the sale was made to Burch; though possibly Brizendine said something about helping to pay for it. A partial payment was made in cash and Burch executed a conditional sales agreement and a Morris Plan Retail Trade Acceptance evidencing the balance due ($596.88), which was payable in seventeen monthly installments. On the next day the conditional sales agreement and trade acceptance were transferred to the Morris Plan Bank, the petitioner, which is in the business of financing such automobile sales. When this contract was tendered the Morris Plan Bank for purchase, the bank made out what is termed a "Confidential Credit Application" for its files. This is upon a form containing a long list of questions which, if answered, would furnish a rather complete statement relating to the applicant's history, activities, and responsibility. In this instance, however, it contained only the name, race, age, and address of the applicant; a statement that he had an income of $125 per month as an insurance salesman in the employment of a Mr. Owen, whose business address is given; and the names of three business houses which had extended credit to the applicant. The information entered on this "credit application" was obtained by the bank over the telephone from the Fulton Motor Company and presumably had been given to the latter by Burch.

In order to satisfy itself as to Burch's desirability as a credit risk, the bank called upon a local credit reporting agency for information and it reported the names of several merchants who had extended Burch credit in rather small amounts with satisfactory results. The bank made no effort to verify any of the limited information it had received from the Fulton Motor Company about Burch. Had it done so it would have found that he was not employed by Mr. Owen and never had been, although he was known to Mr. Owen. It would have found also that the residence address given by Burch was not his home, but was the residence of Mickey Brizendine.

There was no evidence whatever that Burch had ever exercised any control over the car or that it had ever been in his custody at any time after its purchase. On the contrary, there was evidence that, between the time of its purchase and its capture, it had frequently been seen on the streets of Roanoke driven by Craighead with Brizendine riding in it.

Burch seems to be a wandering person about whom little was known. He did not make any claim to ownership of the car and did not appear as a witness in this case to testify as to its ownership. In fact, his whereabouts were unknown. His reputation, so far as it was testified to, was that of a petty gambler and an excessive drinker. His associates were bootleggers and others of like ilk and there was some testimony that he had been handling liquor for Brizendine. But it must be said that Burch had no record or general reputation for violation of the liquor laws, and had inquiry in this respect been made from police officers, as provided by the statute, no such record or reputation would have been disclosed.

The petitioner, not attempting to deny the above-stated facts, asserts its right to have the forfeiture of the car remitted, based on the fact that petitioner had no knowledge or reason to believe that the car would be used in violation of the law and that, inasmuch as Burch had no record or reputation as a violator of the liquor laws, it was not required to make inquiry in this respect.

Having indicated my opinion that the granting or refusal of remission is within the discretion of the court, I am of opinion that in this case remission should not be granted.

■ This is the simple case of a bootlegger buying an automobile for use in his illegal business and causing the title to be placed in the name of an acquiescent straw man who, in fact, had nothing to do with the control, custody, or use of the car. It is a device of increasingly frequent use by bootleggers. Conceding that the petitioner acquired its interest in good faith and without knowledge or reason to believe that the car would be illegally used, its position is not one to appeal to the sympathetic consideration of the court. For it must be said that it was able to remain in that favored state of ignorance only because it refrained from seeking knowledge. Burch was unknown to petitioner and the only

information it had about him and upon which it purchased the contract was that, in his dealing with several local merchants, he had paid bills incurred by him. No effort was made to identify the man or to check upon his occupation or manner of life. It is true that the petitioner is not required by the statute to make such inquiries, but the failure to do so is a matter which the court may well consider in determining whether, considering all the circumstances, this petitioner is facing a hardship brought on through no lack of care on its part and from which it should be relieved.

To grant remission of forfeiture in cases of this sort would be to strip the government of its most effective weapon against the handling of illicit liquor. The possibilities of evasion and fraud in such cases are evident and are almost without limits. That bootleggers have been quick to grasp the possible advantage to them of the statute in question is shown by the growing practice of putting title to their automobiles in the name of straw men. At one term of this court, recently ended, there were disclosed five instances in which cars owned and used by well-known bootleggers and seized while transporting illegal whisky were found to have the titles registered in the names of other persons. In three of these instances, it was admitted that the automobile salesmen, with full knowledge of the identity and character of the real purchaser, had co-operated with him in causing the title to be registered in the name of the straw man. It is not intended to suggest that anything of the sort occurred in the instant case; the evidence is to the contrary. But a finance company which had innocently purchased the conditional sales contract in any of the instances mentioned would be in as strong a position as the petitioner here and equally entitled to remission of forfeiture. If this device for the evasion of the forfeiture statute is to be approved by the courts, then automobile dealers would be at liberty to co-operate with their bootlegging customers in the evasion, so long as they transferred the lien on the car to a finance company; and the finance company would run no risk so long as it refrained from seeking knowledge of the true facts of the purchase.

It may be commented here that finance companies are not in such helpless position as might appear on first impression. Their purchase of these contracts can be made with recourse upon the automobile dealer or upon any terms which they fix for their protection against loss. But to approve remission of forfeiture in such cases would, in my opinion, practically nullify the effect of the forfeiture statute.

No matter how innocent the petitioner may be in this case, its interests must give way to the paramount interest of law enforcement. The petition is denied.