## UNITED STATES v. ONE STUDEBAKER COUPE, 1940 MODEL, MOTOR NO. 92811, et al.

### No. 70.

District Court, W. D. Virginia, at Lynchburg.
June 4, 1941.

Frank S. Tavenner, Jr., U. S. Atty., of Woodstock, Va., for libellant.

Frank G. Davidson, Jr., (of Kemp, Hobbs & Davidson), of Lynchburg, Va., for claimant.

BARKSDALE, District Judge.

This action having been tried upon the facts by the Court without a jury, the Court doth hereby find the facts specially and state separately its conclusions of law thereon, and directs the entry of the appropriate judgment, as follows, in conformity with Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c:

### Findings of Fact.

On July 5, 1940, Mrs. Nina S. Penn purchased from a dealer the 1940 Studebaker automobile here in controversy at the price of $800. The dealer took in trade therefor a Chevrolet automobile owned by Mrs. Penn and allowed her therefor $545, and the balance of the purchase price, namely, $255, was paid by the petitioner from the proceeds of the loan made Mrs. Nina S. Penn. Owen W. Phillips, the son-in-law of Mrs. Penn, accompanied her to the dealer's place of business, helped pick out the car, and drove it away, accompanied by Mrs. Penn, after it had been purchased. The automobile dealer telephoned to the petitioner, the Lynchburg

251

National Bank & Trust Company, and inquired if it would lend Mrs. Penn the cash money which she would require to pay the balance of the purchase price for the automobile. The agent of petitioner replied that petitioner would make the loan if Mrs. Penn complied with its terms and conditions.

Mrs. Penn, during the preceding year or more, had been a customer of petitioner and had been entirely satisfactory as a depositor, borrower and endorser. Therefore, the petitioner, upon her request, agreed to lend her $479.96 on the automobile, the full purchase price of which was $800, and relied upon her credit, together with a lien for the amount lent evidenced upon the certificate of title which was issued by the Virginia Division of Motor Vehicles in the sole name of Mrs. Nina S. Penn, and also a deed of trust executed solely by her.

On the occasion when Mrs. Penn came in person to request this loan she was accompanied by her son-in-law, Owen Phillips. Petitioner agreed to lend Mrs. Penn $479.96 to be secured, as aforesaid, by lien to be shown upon the certificate of title to said car. The proceeds from this loan were distributed by the Lynchburg National Bank & Trust Company as follows: $255 was paid to Brown Automobile Co., Inc., being the cash payment due on said Studebaker car; $196 was applied toward the payment of the balance evidenced by two notes then held by the Lynchburg National Bank & Trust Company, one of Mrs. Owen Phillips and signed by Mrs. Nina S. Penn, as co-maker, with a balance due thereon of $115, and the other of Charles C. Blankinship, and likewise signed by Mrs. Nina S. Penn, with a balance due thereon of $81, and both of which said notes were then secured by a lien on the Chevrolet car which Mrs. Penn traded in, and which lien had to be discharged from the proceeds of the loan made by petitioner. The balance of the proceeds of said loan, namely, $28.96, was the discount due the Lynchburg National Bank & Trust Company on the loan to Mrs. Nina S. Penn. When the time came for Mrs. Penn to execute the note evidencing her obligation to petitioner, Owen Phillips was present, and at the suggestion of petitioner's agent that it would prefer to have two obligors, Owen Phillips signed the note as co-maker with Mrs. Penn, who signed as

maker. Owen Phillips was willing to, and did, sign the note, by reason of the fact that his wife's obligation was being discharged out of the proceeds thereof.

Mrs. Penn paid for the new automobile by trading in her old automobile which she exclusively owned, and paid the balance of the purchase price with her funds; Owen Phillips paid no part of the purchase price and acquired no right to, or interest in, the new automobile; and the petitioner had no knowledge that Owen Phillips accompanied Mrs. Penn when she purchased it.

Petitioner, in making the loan, made no investigation as to the character, reputation or financial status of either Mrs. Penn or Owen Phillips. At this time, petitioner knew Mrs. Penn and had had satisfactory dealings with her over a period of a year or more. Petitioner had also made two loans to Owen Phillips and one to his wife, but as it considered both these loans amply secured by co-makers, it had made no investigation of Owen Phillips.

At the time of the loan here in question, Mrs. Penn had no record or reputation for violating the laws of the United States, or of any state, relating to liquor; and at this time, Owen Phillips had no such record, but he did have a reputation for violating the laws of the United States and the Commonwealth of Virginia relating to liquor. However, this reputation was not known to petitioner, nor was this reputation so notorious as to be generally known in the community. Petitioner did know that Owen Phillips was Mrs. Penn's son-in-law, and that she had assisted him and his wife financially. Inquiry of the law enforcement officers in this community as to the reputation of Owen Phillips would have revealed his reputation to petitioner.

After the purchase of the automobile here in question, it was used by Mrs. Penn, her daughter, Mrs. Phillips, and her son-in-law, Owen Phillips. However, the use of the automobile by Owen Phillips and his wife was by permission of Mrs. Penn, as neither claimed any right to, or legal interest in, this automobile.

After the purchase of said automobile, Owen Phillips used it for the illicit transportation of liquor with increasing frequency, and on November 26, 1940, he was apprehended, by Federal law enforcement agents, driving the said automobile with a load of illicit liquor thereon. The

Government agents seized the said automobile, and this proceeding followed.

I further find that petitioner, the Lynchburg National Bank & Trust Company: (1) has an interest, in the amount of $471.-45, in the automobile here in question which it acquired in good faith, (2) that petitioner had at no time any knowledge or reason to believe that it was being or would be used in the violation of the laws of the United States, or any state, relating to liquor, and (3) that it does not appear that the interest asserted by petitioner arises out of, or is in any way subject to, any contract or agreement under which any person, having a record or reputation for violating the laws of the United States or of any state relating to liquor, has a right with respect to said automobile.

### Conclusions of Law.

The claimant's case is based upon Title 27 U.S.C.A. § 40a, the pertinent portions of which are as follows:

"§ 40a. *Remission or mitigation of forfeiture of vehicle or aircraft; possession pending trial*

"(a) *Jurisdiction of court.* Whenever, in any proceeding in court for the forfeiture, under the internal-revenue laws, of any vehicle or aircraft seized for a violation of the internal-revenue laws relating to liquors, such forfeiture is decreed, the court shall have exclusive jurisdiction to remit or mitigate the forfeiture.

"(b) *Conditions precedent to remission or mitigation.* In any such proceeding the court shall not allow the claim of any claimant for remission or mitigation unless and until he proves (1) that he has an interest in such vehicle or aircraft, as owner or otherwise, which he acquired in good faith, (2) that he had at no time any knowledge or reason to believe that it was being or would be used in the violation of laws of the United States or of any State relating to liquor, and (3) if it appears that the interest asserted by the claimant *arises out of or is in any way subject to any contract or agreement under which any person having a record or reputation for violating laws of the United States* or of any State relating to liquor *has a right with respect to such vehicle* or aircraft, that, before such claimant acquired his interest, or such other person acquired his right under such contract or agreement, whichever occurred later, the claimant, his officer or agent, was informed in answer to his inquiry, at the headquarters of the sheriff, chief of police, principal Federal internal-revenue officer engaged in the enforcement of the liquor laws, or other principal local or Federal law-enforcement officer of the locality in which such other person acquired his right under such contract or agreement, of the locality in which such other person then resided, and of each locality in which the claimant has made any other inquiry as to the character or financial standing of such other person, that such other person had no such record or reputation." (Italics mine).

This statute, in paragraph (b), sets out three conditions precedent to remission or mitigation in favor of a lien-holding claimant.

It is conceded here that condition, subparagraph (1), has been established, as the proof clearly shows that the claimant has an interest in the automobile here involved by virtue of a lien which it acquired in good faith.

■ As to condition (2), the Government admits that claimant had no knowledge that the automobile in question "was being or would be used in the violation" of state or Federal liquor laws, but the Government contends that claimants did have "reason to believe" that it was being, or would be, so used. The Government bases this contention upon the fact that Owen Phillips came to the Bank with his mother, Mrs. Penn, when the loan was closed, and signed the note evidencing the loan made by the Bank to Mrs. Penn to enable her to purchase the automobile, that Owen Phillips had a reputation as a violator of state and Federal liquor laws, and that inquiry of local law enforcement officers as to him would have disclosed such reputation. I am, however, unable to agree with this contention. At that time, Owen Phillips' connection with the illicit liquor traffic was not so notorious as to be a matter of common and general knowledge in the community. All that the claimant actually knew about Owen Phillips at that time was that he was Mrs. Penn's son-in-law, that he and his wife had been financially assisted by Mrs. Penn, that his obligations at the Bank had been satisfactorily met, and that he was willing to, and did, sign Mrs. Penn's note as co-maker. Although it has been held that a claimant may not shut his eyes to facts and circumstances within his knowledge, yet it is to be noted

that no affirmative duty or inquiry is imposed upon the claimant by condition precedent (2). I can see nothing in the facts and circumstances known to the Bank which might be construed as reason to believe that the automobile was being, or would be, used in violation of the liquor laws.

The Government relies strongly on the case of C. I. T. Corp. v. United States, 4 Cir., 86 F.2d 311. There, Houston, the purchaser of an automobile, procured a loan from the claimant and gave it a lien on his automobile to secure the note. He had no record or reputation as a violator of the laws relating to liquor, but he resided in the same house as one Trump, who did have a criminal record and reputation as such a violator, and after the purchase Trump frequently drove the car, and was driving it in violation of the law when it was seized. The claimant investigated Houston, the purchaser, and had him make a written statement upon its form, which included the following question:

"Have you ever used a car, or do you intend to use above car, to transport alcoholic beverages, or have you had any difficulty respecting prohibition or enforcement laws?"

The answer to this question was left blank.

The court held that conditions (1) and (3) of subsection (b) had been met, for, as Trump had no legal interest in the automobile, it was not incumbent upon the claimant under the statute to make an inquiry as to his record or reputation, but the court said that it did not follow that the claimant "might shut its eyes to facts which in the course of the transaction came to its attention." The court held that the failure of the purchaser to answer the question set out above imposed upon the claimant the duty to make inquiry and ascertain why the question was not answered and to investigate all other circumstances surrounding the purchaser and his occupation which might throw light upon the possible use of the vehicle. Inasmuch as the trial court found that, had such an inquiry been made, the claimant would have had reason to believe that the car would be used for improper purposes, the court held that the claimant had failed to prove, as required by paragraph (b) (2) of the Act, that it had no reason to believe that the vehicle would be used for unlawful purposes.

This holding seems to me entirely proper, but not controlling under the circumstances of the case here in consideration. In the decided case, the fact that the purchaser failed to answer the question quoted above, should put any reasonably prudent person upon his guard. There is no such circumstance present in the case here under consideration. It is true that claimant did not investigate Mrs. Penn, the purchaser, but there was no reason why it should have investigated her. Claimant knew Mrs. Penn as a satisfactory customer, and it is conceded that inquiry as to her would have revealed nothing detrimental to her character.

The case of United States v. One 1938 Model Chevrolet Coach, 5 Cir. 1939, 106 F. 2d 985, 987, seems to me much more pertinent. There, claimant sold a car to one O'Kelley, who used an old car in lieu of a cash payment and represented to claimant that the used car was his. Actually, the used car was the property of one Gee who had the reputation of violating the liquor laws. Gee was with O'Kelley when the trade was made, but he made no statement or claim that he had an interest in the used car, and claimant had no reason to believe that he had any interest therein. The claimant asked Gee, whom he did not know, to sign as surety or endorser for O'Kelley. Gee agreed, and signed as requested. Claimant investigated O'Kelley, but did not investigate Gee. It was held that a remission was proper, and the court said:

"* * * We think the evidence ample to sustain his finding that the conditions of Section 40a were met by the claimant. When a claimant in a remission suit meets the burden of proof imposed by the statute, the court may in the exercise of its sound discretion allow remission. If a claimant has been negligent, or in good conscience ought not to be relieved, the court should deny his application. 'Subsection (b) (3) was intended to prevent remission to a claimant who had failed to inquire when he should have done so, to one chargeable with willful negligence or purpose of fraud.' United States v. One 1936 Model Ford V-8 Deluxe Coach, Commerce Credit Company, Claimant, 307 U.S. 219, 226, 237, 59 S.Ct. 861, 870, 83 L.Ed. 1249.

"The seller here made a careful investigation of O'Kelley. His record was good and it was not incumbent upon the dealer to seek information as to Gee.

The court did not abuse its discretion and the judgment of remission must stand. United States v. Automobile Financing, Inc., 5 Cir., 99 F.2d 498; C. I. T. Corporation v. U. S., 4 Cir., 86 F.2d 311."

Therefore, I conclude that condition (2) has been complied with by claimant.

Condition (3) imposes upon the claimant the duty to make certain specified inquiries if it appears that the interest asserted by the claimant arises out of any contract with any person having a record or reputation for violating liquor laws, who "has a right with respect to such vehicle." It is to be carefully noted that this duty of inquiry is limited to cases where the person through whom claimant's interest arises has a right with respect to *such vehicle,* and does not embrace within its terms obligors of the obligation given to the claimant. In the case here under consideration, Mrs. Penn was the only person who had a right with respect to the vehicle here involved. It is conceded that she had no record or reputation as a violator of the liquor laws. Owen Phillips, who did have such reputation, was interested in the automobile in the sense that it was of interest to him to use the automobile for illicit liquor traffic, but he had no legal interest therein. And the statute does not use the word "interest" or the phrase "interested in"; the statute uses the word "right", and I am satisfied that the word "right", as used in the statute, means "legal right". Some of the decisions use the word "interest" or the phrase "interested in", but I am satisfied that the courts using such phraseology meant "legal interest" or "legally interested in", and meant such phraseology to be synonymous with "legal right".

The evidence here clearly shows, and I have found as a fact, that Owen Phillips had no legal right or interest in the automobile here in question, but that such use as he made of the automobile was by permission of Mrs. Penn, the owner.

I find no decision which undertakes to enlarge or broaden this language of the statute. On the other hand, it seems to me that in the case of United States v. One 1936 Model Ford V–8 Deluxe Coach, 307 U.S. 219, 59 S.Ct. 861, 83 L.Ed. 1249, affirming the decision of the Fourth Circuit Court of Appeals, 93 F.2d 771, the language of the statute is given a restricted construction. In this case, one Guy Walk- er actually purchased the automobile in question. The conditional sales contract, however, was executed in the name of Paul Walker, his brother, who had no actual interest in the transaction, and the title to the car was taken in the name of Paul Walker. Guy Walker had both a record and reputation of violating the liquor laws; Paul Walker had no such reputation. The claimant, Commercial Credit Company, purchased the contract. Before accepting the assignment thereof, claimant investigated Paul Walker, and ascertained that he had no record or reputation as a violator of the liquor laws, but that Guy Walker did have such reputation. However, the fact that Guy Walker was the real purchaser and party in interest, did not appear from the pertinent documents nor did the claimant know that he was the real purchaser. The court held that the claimant was entitled to a remission, and on page 225 of 307 U.S., on page 864 of 59 S.Ct., 83 L.Ed. 1249, quoted from the opinion of the Circuit Court as follows:

" 'The involved language of subsection (b) (3) of the act does permit the possible interpretation that the lienor is charged with the duty of making inquiry as to every one bearing a bad reputation or record, who may have a right under the contract of sale, whether or not it appears on the face of the instrument. See Federal Motor Finance v. United States, 8 Cir., 88 F.2d 90. But in our view Congress did not intend to impose upon the lienor the obligation to ascertain at his peril the identity of every person having an interest in the property and to make inquiry of the law enforcement officers as to the previous record and reputation of every such person, unless from the documents themselves or other surrounding circumstances the lienor possesses information which would lead a reasonably prudent and law-abiding person to make a further investigation.'

\* \* \* \* \* \*

"Manifestly, section 204 [27 U.S.C.A. § 40a] is a remedial measure. It empowers the courts, exercising sound discretion, to afford relief to innocent parties having interests in condemned property where the *claim is reasonable and just.* Its primary purpose is not to protect the revenues; but this is proper matter for consideration whenever remission is sought. The section must be liberally construed to carry out the objective. The point to be sought

is the intent of the law-making powers. *Forfeitures are not favored;* they should be enforced only when within both letter and spirit of the law. * * *" (Italics mine.)

Mr. Justice Douglas, in a dissenting opinion, made some observations in regard to a claimant's duty where purchases of automobiles are made through "straw men". However, these observations are not pertinent to the case here under consideration, because this is not the case of a "straw man" purchase.

I, therefore, conclude that claimant is not here precluded by the requirements of condition (3).

Viewing the case as a whole, it seems to me that claimant entered into a bona fide transaction, that it acted in good faith, having no reason to believe that the automobile in question was intended for the illicit liquor traffic, and that it did not shut its eyes to any facts or circumstances which should have put it upon notice of intended violations of the liquor law. It is, therefore, my conclusion that there should be a remission of the forfeiture to claimant to the extent of the unpaid balance of its note secured by lien upon the automobile, and an order will be entered accordingly.