# HARRIS v. UNITED STATES.

## No. 6800.

United States Court of Appeals, Fourth Circuit.

Argued June 3, 1954.

Decided Aug. 4, 1954.

Soper, Circuit Judge, dissented.

John B. Browder, Richmond, Va. (Leaman & Browder, Richmond, Va., on brief), for appellant.

Richard R. Ryder, Asst. U. S. Atty., Richmond, Va. (L. S. Parsons, Jr., U. S. Atty., Norfolk, Va., on brief), for appellee.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

Charles Harris, claimant herein, was the owner of a Chevrolet truck. This truck was forfeited to the Government, when the truck was discovered in the transportation of illegal liquor, while in the possession of Raymond Davis. Harris sought relief from the forfeiture in the United States District Court for the Eastern District of Virginia. As the basis for this relief, Harris asserted that he parted with the possession of the truck to Davis, in the course of his U-Drive-It business, in good faith and utterly ignorant both of the illegal use to which the truck was to be put, and also of the bad reputation and past record of Davis in the field of trafficking in illegal liquor.

The District Court, after hearing the evidence and arguments, concluded that Section 3617(b)(3), Title 18 U.S.C.A. was applicable to Harris and that his admitted failure to make the statutory inquiries as to the reputation and record of Davis as a violator of the liquor laws disqualified him for the relief he sought. Harris has appealed to us.

There is little or no conflict in the facts. Davis, unbeknown to Harris, had

been convicted of violating, and had the reputation of being a violator of, the liquor laws. Harris, "an honest, industrious, law-abiding Negro * * * operates a service station and rents trucks to those who wish to hire a truck" (District Court's Opinion). Davis had been purchasing gas and oil for his automobile from Harris for a while when, on the night prior to the episode in question, he asked Harris to rent him a truck for the following day. Harris asked and received $25 from Davis for the use of the truck but Harris made no inquiries of Davis. This is the first libel ever filed against one of appellant's trucks. According to the District Court, "It may be conceded that the claimant acted in good faith."

Title 18 U.S.C.A. § 3617(a) gives to the Court decreeing forfeiture of a vehicle the power to remit or mitigate the forfeiture. Subsection (b) thereof then provides as follows:

> "*Conditions precedent to remission or mitigation.* In any such proceeding the court shall not allow the claim of any claimant for remission or mitigation unless and until he proves (1) that he has an interest in such vehicle or aircraft, as owner or otherwise, which he acquired in good faith, (2) that he had at no time any knowledge or reason to believe that it was being or would be used in the violation of laws of the United States or of any State relating to liquor, and (3) if it appears that the interest asserted by the claimant arises out of or is in any way subject to any contract or agreement under which any person having a record or reputation for violating laws of the United States or of any State relating to liquor has a right with respect to such vehicle or aircraft, that, before such claimant acquired his interest, or such other person acquired his right under such contract or agreement, whichever occurred later, the claimant, his officer or agent, was informed in answer to his inquiry, at the headquarters of the sheriff, chief of police, principal Federal internal-revenue officer engaged in the enforcement of the liquor laws, or other principal local or Federal law-enforcement officer of the locality in which such other person acquired his right under such contract or agreement, of the locality in which such other person then resided, and of each locality in which the claimant has made any other inquiry as to the character or financial standing of such other person, that such other person had no such record or reputation."

Harris admittedly fulfilled requirements (1) and (2) of Subsection (b) and contends that (3) is not applicable to those engaged in the U-Drive-It business, the specified inquiries being required only of those doing a banking, financing or other type business in which it is customary to make credit inquiries about those who are to have possession of the vehicle.

The sole question here involved is whether the provisions of Section 3617 (b)(3) of Title 18 U.S.C.A., requiring certain inquiries of designated law enforcement officials by one delivering possession of a motor vehicle to another is applicable to one renting a vehicle in the usual course of his U-Drive-It business. Or, to be specific, whether, in the instant case, the admitted non-compliance with Section 3617(b)(3) by Harris, deprived the District Court of *power* to remit the forfeiture.

A brief outline of legislation antecedent to the statute before us seems in order. From at least the Acts of July 13, 1866, and June 6, 1872, 26 U.S.C.A. § 1624,[1] all vehicles and conveyances used with intent to defraud the Government in tax matters were forfeit; but the Secretary of the Treasury in matters involving $500.00 or less had authority "upon satisfactory proof, to be fur-

1. Now 26 U.S.C.A. § 3724.

nished in such manner as he shall prescribe * * *" to remit such forfeiture if "incurred without willful negligence or any intention of fraud on the part of the owner of said property." In matters involving over $500 this authority was given to the Secretary of Treasury and the Attorney General. After the enactment of the National Prohibition Act, the power of remission in alcoholic matters was given to the Secretary of the Treasury or, if under the Customs Laws, to the Secretary of Commerce in the absence of "willful negligence or without any intention on the part of the petitioner to defraud the revenue or to violate the law * * *," 19 U.S.C.A. § 1618. This was the state of the law when Congress came to consider the enactment of the statute now under discussion. There is nothing to indicate that under the former statutes it was customary for these cabinet officers to require that specified inquiries under the present Act be made as to U-Drive-It Companies. The Secretaries of the Treasury and Commerce and the Attorney General were unrestricted in matters of remission save as to a finding that there had been no willful negligence or intent to defraud or violate the law on the part of the petitioner.

This brings us to the decided cases. In United States v. Drive New Cars, Inc., 10 Cir., 208 F.2d 774, Circuit Judge Phillips denied remission. The owner of the cars rented them on a semi-permanent basis to a taxi-cab company, to be used as taxis. A bank held a chattel mortgage on the cars also. Both the owner and the bank sought remission from the forfeiture. Although it was found that both the bank and the owner acted in good faith and without any knowledge that the vehicles would be used in violation of the laws of the United States, both parties were held not to be entitled to remission because of failure to comply with 18 U.S.C.A. § 3617(b)(3). It is noteworthy, however, that the opinion was not concerned with the question of whether the Statute applied to a car rental agency, but dealt exclusively with an interpretation of what constituted compliance with the above-enumerated section of the Statute.

Likewise, the case of Pittsburgh Parking Garages, Inc., v. United States, 3 Cir., 108 F.2d 35, involved a vehicle owned by the named corporation, leased to an individual and seized in the possession of the lessee while violating the alcohol tax laws. Again, the applicability of the remission Statute to a *lessor* of the truck was not discussed in the opinion. The opinion of Judge Biddle was directed to a holding that, when compliance with 18 U.S.C.A. § 3617 (then Act Aug. 27, 1935, § 204, 27 U.S.C.A. § 40a) (b)(1) and (2) has been shown, then compliance with (b)(3) is only required after a showing by the Government that inquiry would have revealed the reputation for liquor law violation. Thus, while these two cases, in total effect, held that a lessor of a vehicle was subject to all the conditions of the Statute, that exact question was not really before the courts and was not discussed in the opinions.

United States v. One 1936 Studebaker Sedan, D.C.W.D.Wash.N.D., 21 F.Supp. 499, is another such case. Here the vehicle was owned by a car rental agency and a chattel mortgage on the car was held by C. I. T. Corporation. An arrangement was made between C. I. T. Corporation and the rental agency whereby regular and thorough investigations would be made of each lessee, but this system was not followed, and had not been followed for nearly two years. Here again it was apparently assumed that the lessor was bound by all conditions of the Statute and the primary question was whether C. I. T. was likewise bound by all the requirements of the Statute. In denying remission or mitigation, District Judge Neterer said:

> "To be entitled to remission and/or mitigation under section 40a (b)(3), the C. I. T. corporation must show that at the time it acquired its interest, and at the time

the bailee under the 'Drive-Yourself' contract 'obtained the auto, it by its officers or agents made inquiry at * * * the headquarters of the * * * principal Federal Internal Revenue officer * * *.'" 21 F.Supp. 501.

That was the principal holding of this case and, again, it cannot be said that the Court came directly to grips with the question involved in the instant appeal.

In United States v. One Chevrolet Sedan, D.C.E.D.Pa., 18 F.Supp. 799, District Judge Maris held that he could not remit the forfeiture of an automobile used in the transportation of illegal liquor in favor of the innocent assignee of the lessor of the automobile, since the assignee failed to show that it had made the proper inquiry of the law enforcement officers and, at the time the lease was made, the lessee had a record of liquor law violation and proper inquiry would have so revealed. Thus, in this case as in the cases to which we have heretofore referred, it was apparently assumed by the Court that the lessor of an automobile was embraced within the limitations of the Statute to the same extent as a mortgagee or a party to a conditional sales contract, and the opinion dealt principally with the construction and applicability of other aspects of the Statute.

Although the precise question before us seems not to have been seriously discussed in any opinion, there appear to be grounds to sustain a more lenient interpretation of the Act in its application to automobile rental agencies. It has been held that the Act is inapplicable to *lenders* of an automobile. United States v. Frank Graham Co., 5 Cir., 199 F.2d 499. And see, Wright v. United States, 4 Cir., 192 F.2d 216; United States v. One 1936 Model Ford Coach Auto, D.C., 58 F.Supp. 802. It has also been held that a taxi driver is not required to make investigation of his passengers. United States v. One Haynes Automobile, 9 Cir., 290 F. 399.

In C. I. T. Corporation v. United States, 4 Cir., 89 F.2d 977, Circuit Judge Soper had under consideration the situation of a conditional sale by a finance company of an automobile to a person with no criminal record, who was acting as a "shield" or "fence" for known bootleggers. In his opinion, 89 F.2d at page 979, Judge Soper said:

"Manifestly the act was passed to ameliorate the hardships suffered by innocent lienors from the seizure of offending vehicles, and the reference in the third condition of the act to interests of the claimant and of the violator of the law in the vehicle under a contract or agreement shows that Congress had especially in mind the rights of finance companies under conditional sales contracts which undoubtedly constitute the most numerous class to which the act applies."

Perhaps the strongest persuasion to liberality in the instant case will be found in United States v. One 1936 Ford V–8 Deluxe Coach, 307 U.S. 219, 59 S. Ct. 861, 83 L.Ed. 1249. This case, like the one last mentioned, dealt with the purchase of an automobile, through a finance company, by a "straw" man. In determining the applicability of the statutory requirements to this situation, Mr. Justice McReynolds thoroughly reviewed the history of the Act and concluded that it should be liberally interpreted in favor of remission. Although he was not considering the point immediately before us, it is interesting to note that he quoted, in a footnote 307 U.S. at pages 233 and 234, 59 S.Ct. at page 868, House Reports, Vol. 4, 74th Congress, 1st Session, 1935, Report No. 1601, p. 6, which report stated in part:

"This last requirement ( (b)(3) ) is predicated upon the recognition of the 'bootleg hazard' as an element to be considered *in investigating a person as a credit risk.* As a matter of sound business practice, automobile dealers, finance companies, and prospective lien-holders on au-

tomobiles examine records, and make inquiry of references and credit rating agencies as to the owner's or prospective purchaser's reputation for paying his debts and his ability to do so. This subsection merely requires that *in the making of such inquiry, the 'bootleg hazard' also be examined as one aspect of the credit risk.*" (Italics ours.)

In commenting upon this passage, Mr. Justice McReynolds said, 307 U.S. at pages 236–237, 59 S.Ct. at pages 869–870:

> "These facts indicate that Congress intended a reasonable inquiry concerning the bootleg risk should be made *in connection with the investigation of financial responsibility.* They negative the motion that wholly innocent claimant at his peril must show inquiry concerning something unknown and of which he had no suspicion. Dealers do not investigate what they have no cause to suspect.
>
> "The forfeiture acts are exceedingly drastic. They were intended for protection of the revenues, not to punish without fault. It would require unclouded language to compel the conclusion that Congress abandoned the equitable policy, observed for a very long time, of relieving those who act in good faith and without negligence, and adopted an oppressive amendment not demanded by the tax officials *or pointed out in the reports of its committees.*" (Italics ours.)

This brings us to the case of United States v. One Ford Coach, D.C.W.D.Va., 20 F.Supp. 44, upon which the District Judge below largely based his decision. The automobile in that case was sold to one Burch and the financing was handled through the Morris Plan Bank. At the time of the seizure of the automobile, it was being used by someone other than Burch. Morris Plan Bank, seeking remission, asserted that it was entitled to remission because of compliance with 27 U.S.C.A. § 40a—it had an interest in the automobile; it had no knowledge or reason to believe that Burch was involved in bootlegging; and an investigation would have revealed that Burch had no reputation for law violation. These latter facts were not contested.

There were other facts, however, which showed wanton negligence by Morris Plan. It had received information as to Burch's employment and home address. Investigation of these sources would have shown that Burch was not employed as stated and that his home address was, in fact, the address of a notorious bootlegger. Further investigation would also have shown that Burch, at the time of his purchase of the automobile, was accompanied by that same bootlegger and had apparently been acting in only a "straw" capacity.

Thus, the question before Judge Paul was whether, even though the requirements of the Statute had been met, he still had the *discretion* to deny remission because of this gross negligence of Morris Plan in its inadequate investigation of Burch. He held that even if the statutory requirements were met, remission was not mandatory upon the courts. He, accordingly, exercised his discretion to enforce the forfeiture without mitigation.

In the opinion in the instant case below, the District Judge stated:

> "Because of the language of the statute and the decision construing that language by a district court of Virginia, this court is constrained to deny the claimant's petition for remission. The opinion in the Virginia case referred to, United States v. One Ford Coach, D.C., 20 F.Supp. 44, reviews the legislative history and purpose of the forfeiture seizure and holds that the statute is absolute and unconditional in its provisions for forfeiture, and recognizes no exceptions in favor of innocent owners or lienors.

The Court said that it was without power to consider any remission or mitigation except upon the showing that the conditions of the statute had been met. Except for that decision this court might have considered further the inherent power of United States Courts to grant relief against the severity of forfeiture in such a case as this. If the interpretation of the language of the statute is to be changed for this district this court feels that an appellate court or the Congress should do it."

The case of United States v. One Ford Coach, D.C., 20 F.Supp. 44, did not involve a *claimant who rented his car* to one who used it in illegal liquor traffic. In that case, a bank was involved. At 20 F.Supp. page 44, Judge Paul thus began his opinion:

> "*The Morris Plan Bank* has filed its petition for remission of forfeiture of a Ford automobile seized by officers of the government while engaged in transporting ardent spirits upon which the tax had not been paid. The petitioner asserts an interest in the automobile by virtue of a *conditional contract of sale*". (Italics ours.)

Again, at 20 F.Supp. page 47, Judge Paul said:

> "This is the simple case of a bootlegger buying an automobile for use in his illegal business and causing the title to be placed in the name of an acquiescent straw man who, in fact, had nothing to do with the control, custody, or use of the car. It is a device of increasingly frequent use by bootleggers."

Accordingly, that case, upon which the District Judge largely based his decision, is a far cry from the instant case before us, and the problem which we must decide. See, also, United States v. Ford Truck, 3 Cir., 115 F.2d 864; United States v. Automobile Financing, Inc., 5 Cir., 99 F.2d 498; Federal Motor Finance v. United States, 8 Cir., 88 F.2d 90; The Dependent, 5 Cir., 24 F.2d 538; United States v. One Hudson Hornet Sedan, D.C., 110 F.Supp. 41; United States v. One Chevrolet Stylemaster Sedan, D.C., 91 F.Supp. 272; United States v. One 1941 Chrysler Brougham Sedan, D.C., 74 F.Supp. 970, 971; United States v. One Studebaker Coupe, D.C., 39 F.Supp. 250; United States v. One Black Horse, 1 Cir., 129 F. 167.

■■ The transaction here between Harris and Davis was clearly a bailment for the mutual benefit of the bailor and bailee, a *locatio rei*, or the hired use of a thing. In such a bailment, "The bailee acquires the right, as against the world, to hold and use the hired chattel during the time stipulated in the contract of hiring. His interest therefore is clearly a special property." Dobie on Bailments and Carriers, § 48, p. 112. Manifestly, then, the case comes within the *letter* of 18 U.S.C.A. § 3617(b)(3), for claimant's interest is "subject to any contract or agreement under which any person having a record or reputation for violating laws of the United States or of any State relating to liquor has a right with respect to such vehicle". And the statutory inquiry must be made "before such claimant acquired his interest, or such other person acquired his right under such contract or agreement". We think, however, that claimant does not come under either the spirit of the Act, or the legislative intent, or the end and purpose which Congress had in mind when the Act was passed. We believe that § 3617(b)(3) is not applicable to those engaged in the customary course of the U-Drive-It business; and it is applicable primarily to those doing a banking, financing or other similar type of business, involving chattel mortgages, conditional sales, lending money with the vehicles as security for the loan, in all of which it is customary to make credit inquiries about those who are to have possession of the vehicle.

■■ It is well settled that liberal interpretation of a statute leading to absurd or unjust results is to be avoided

and that the statute should be given a meaning in accord with its spirit and the purpose of its enactment. As said by Mr. Justice Field in United States v. Kirby, 7 Wall 482, 486, 19 L.Ed. 278, in a passage quoted with approval by Chief Justice Hughes in Sorrells v. United States, 287 U.S. 435, 447, 53 S.Ct. 210, 214, 77 L.Ed. 413:

> "'All laws should receive a sensible construction. General terms should be so limited in their application as not to lead to injustice, oppression, or an absurd consequence. It will always, therefore, be presumed that the legislature intended exceptions to its language, which would avoid results of this character. The reason of the law in such cases should prevail over its letter.'"

See also Holy Trinity Church v. United States, 143 U.S. 457, 459–462, 12 S.Ct. 511, 36 L.Ed. 226; Lau Ow Bew v. United States, 144 U.S. 47, 12 S.Ct. 517, 36 L.Ed. 340; Territory of Hawaii v. Mankichi, 190 U.S. 197, 212–214, 23 S.Ct. 787, 47 L.Ed. 1016; United States v. Jin Fuey Moy, 241 U.S. 394, 402, 36 S. Ct. 658, 60 L.Ed. 1061; United States v. Katz, 271 U.S. 354, 362, 46 S.Ct. 513, 70 L.Ed. 986; United States v. Chemical Foundation, 272 U.S. 1, 18, 47 S.Ct. 1, 71 L.Ed. 131.

It may be that in an extensive transaction, when the bailment covers a long period of time, so that the interest of the bailee in the bailed chattels far exceeds that of the bailor, the statutory inquiries might be normally expected and legally required. An example of this would be the leasing by a motor company of a fleet of trucks to a manufacturer for the delivery of the latter's products to customers, when the lease extended over months or even years. We do not pass on this question since it is not before us. We have no such case. Here, the claimant, operating on a very small scale, "an honest, industrious, law-abiding Negro * * * operates a service station and rents trucks to those who wish to hire a truck." (Opinion of the District Judge below.)

Certainly if the mandatory inquiries prescribed by the Act must be made by U-Drive-It companies, and others who lend motor vehicles for hire, this would impose a terrific handicap on this business. Too frequently in such businesses, these inquiries are altogether impracticable. Usually, the amount of money involved is relatively small and the customers pay cash or make a monetary deposit. Generally, the vehicle is needed for immediate use and for comparatively short periods of time. Frequently, the customer is away from home, where statutory inquiry must be made. Much of this business is done at times and hours when the designated law officers are not available for inquiries.

Claimant, in his brief, asks the following pertinent questions: "Could Congress have intended that the traveler deplaning at an Eastern airport wait until the chief of police of his home city on the West Coast cleared his record to the U-Drive-It proprietor before renting him a vehicle? Did it intend to prevent all automobile rentals before and after usual business hours and prevent them entirely on Saturdays, Sundays and other holidays? Was a revenue measure intended to abolish a legitimate business likewise producing revenue?" To these questions we add two more. Pullman cars frequently carry advertisements urging the travelling public to use Pullman cars for safety and to have a U-Drive-It car meet the passenger when he arrives at the station in the city of his destination. Again, in *a bailment for the bailee's sole benefit,* "But when the loan is created for a definite time or for a definite purpose, the bailee (it would seem) having once entered upon the bailment, has a special property in the goods." Dobie on Bailments and Carriers, § 38, page 85.

Would the innocent U-Drive-It Company, which did not make the statutory inquiries before hiring the car to the Pullman passenger, be irretrievably

bound to a forfeiture of its car, when the passenger used the car in illegal liquor traffic? Or suppose A, in utmost good faith, gratuitously lends his car to a visiting friend, B, for a day, so that B may keep an important business engagement in a nearby city. Should A lose his car simply because, before the loan, he failed to make the required inquiries, and the false friend, B, employed the car to transport illegal liquor?

We find it difficult to answer these questions save in a manner that is favorable to claimant herein. Again, as has been indicated, the claimant, who has made the required inquiries and received favorable answers, is not entitled, as a matter of right, to relief from the forfeiture. He, then, may simply claim relief which the court has *power* to grant, yet the court, in its sound discretion, may grant or refuse the relief, as it sees fit.

The Government is fully protected here, too, against the *guilty* persons who rent out their motor vehicles for hire, by the preliminary provisions of 18 U. S.C.A. § 3617, which read:

"*Conditions precedent to remission or mitigation.* In any such proceeding the court shall not allow the claim of any claimant for remission or mitigation unless and until he proves (1) that he has an interest in such vehicle or aircraft, as owner or otherwise, which he acquired in good faith, (2) that he had at no time any knowledge or reason to believe that it was being or would be used in the violation of laws of the United States or of any State relating to liquor".

■ We hold, then, that since 18 U. S.C.A. § 3617(b)(3) is not applicable to the claimant herein, the District Court had *power* to grant the remission of the forfeiture; but that such remission, or the refusal of it, rests in the sound discretion of the District Court. The judgment of the District Court is, according-ly, reversed, and the case is remanded to that court to decide, in the exercise of its sound discretion, the question of remission *vel non.*

Reversed and Remanded.

SOPER, Circuit Judge (dissenting).

It does not seem to me unreasonable to require the U-Drive-It Companies to comply with the terms of the statute. If they choose to rent their cars to any one who comes along, they must accept the attendant risks. Their protection lies in the fact that in the vast majority of cases, such as those described in the opinion of the court, the renter of the car uses it for legitimate purposes. Exceptional cases, not limited to bootleggers, which involve loss, inevitably occur because the car owner entrusts his vehicles to strangers without inquiry in order to increase the revenue of the enterprise; but that is an expense of the business which he must reckon with.

In any event, the language of the statute clearly includes every car owner who gives an interest in the vehicle to another by contract or agreement. Doubtless Congress had primarily in mind automobile dealers, finance companies and prospective lien holders, but it was careful not to confine the statute to such persons and broadened it so as to include "any claimant" with an interest arising out "of any contract" with a person having a bad reputation for violating the liquor laws. As the opinion of the court shows, it has been held in a number of federal circuits that the statute applies to lessors in general. The discretion of the District Judge to remit forfeitures is manifestly limited by the conditions of the statute and should be exercised in accordance therewith. It should be borne in mind that the basic statute is 26 U.S.C.A. § 3321 which provides for the forfeiture of vehicles used in the removal or concealment of illicit liquors; and that it is for Congress rather than the courts to determine the permissible exceptions to the rule.