**UNITED STATES of America,**
Libelant

v.

**ONE 1956 PLYMOUTH 4-DOOR SEDAN,**
Motor No. P28–152751, Serial No.
14231122, Respondent.

Civ. A. No. 1149.

United States District Court
W. D. Virginia,
Roanoke Division.

Sept. 26, 1961.

Frank M. McCann, Asst. U. S. Atty., Roanoke, Va., for plaintiff.

B. A. Davis, III, of Davis, Davis & Davis, Rocky Mount, Va., for defendant.

DALTON, Chief Judge.

### Statement of the Case

On or about December 15, 1960, investigators of the Alcohol and Tobacco Tax Division, Internal Revenue Service, United States Treasury Department, seized one 1956 Plymouth 4-door Sedan, Motor No. P28–152751, Serial No. 14231122, at the premises of Marie Cooper Ramsey in Franklin County, Virginia. The Plymouth Sedan was used, on or about that date, by Elmer Thomas Quinn in violation of the Internal Revenue Laws.

A libel of information was filed on May 24, 1961, in this Court praying for forfeiture of this automobile, for breach of the provisions of Section 7302, Internal Revenue Code of 1954, 26 U.S.C.A. § 7302.

There was filed on the same date an affidavit or claim of ownership and bond by Colonial Chrysler Corporation, Martinsville, Virginia, executed on or about February 1, 1961. An answer and petition for remission was subsequently filed on June 2, 1961, by Colonial Chrysler Corporation.

The automobile was forfeited and condemned to the United States by a decree of this Court dated September 18, 1961, after a trial on this date before the Court sitting without a jury. Ruling on the petition for remission was deferred for arguments by counsel.

From the trial and the arguments of counsel, the following facts have been disclosed which are pertinent to this inquiry:

That Colonial Chrysler Corporation, an automobile dealer, is the owner of the automobile. That on the afternoon of December 15, 1960, Colonial Chrysler Corporation loaned the automobile to Elmer Thomas Quinn in good faith, without knowing or having any reason to

believe that Elmer Thomas Quinn would use the automobile in violation of the Internal Revenue Laws.

That the automobile was loaned to Quinn for the purpose of driving while his own automobile was being repaired in the Service Department of the Corporation, and also for the purpose that Quinn might show the automobile to his father in Ferrum, Virginia, 35 miles distance, a prospective purchaser for the automobile.

That the company had had prior dealings with the Quinn family, having sold Quinn's wife an automobile about one year prior to the occurrence.

That Colonial Chrysler Corporation did not, before loaning the automobile to Quinn, investigate to see whether or not Quinn had a reputation or record for violating either federal or state liquor laws, according to Section 3617(b), Title 18 U.S.C.A.

That for some time prior to December, 1960, Quinn had a reputation for violating federal liquor laws with agents of the United States Treasury Department, Alcohol and Tobacco Tax Division, Internal Revenue Service, stationed in Roanoke, Virginia, but Quinn did not have a public reputation for violating such laws.

That had Colonial Chrysler Corporation made an inquiry as required by Section 3617(b), it would have been advised of the "bad reputation" of Quinn.

### Opinion

Claimant, Colonial Chrysler Corporation, does not challenge the decision of the Court to a decree of forfeiture; it seeks remission and mitigation of the forfeiture to the extent of its financial interest in said vehicle.

Under 18 U.S.C.A. § 3617(b), the Court has the power to remit or mitigate the forfeiture, providing three conditions precedent to the granting of such applications are satisfied:

"In any such proceeding the court shall not allow the claim of any claimant for remission or mitigation unless and until he proves (1) that he has an interest in such vehicle or aircraft, as owner or otherwise, which he acquired in good faith, (2) that he had at no time any knowledge or reason to believe that it was being or would be used in the violation of laws of the United States or of any State relating to liquor, and (3) if it appears that the interest asserted by the claimant arises out of or is in any way subject to any contract or agreement under which any person having a record or reputation for violating laws of the United States or of any State relating to liquor has a right with respect to such vehicle or aircraft, that, before such claimant acquired his interest, or such other person acquired his right under such contract or agreement, whichever occurred later, the claimant, his officer or agent, was informed in answer to his inquiry, at the headquarters of the sheriff, chief of police, principal Federal internal-revenue officer engaged in the enforcement of the liquor laws, or other principal local or Federal law-enforcement officer of the locality in which such other person acquired his right under such contract or agreement, of the locality in which such other person then resided, and of each locality in which the claimant has made any other inquiry as to the character or financial standing of such other person, that such other person had no such record or reputation."

There is no question about the first condition. Likewise, there is no doubt as to the second condition. The Court has found as a fact that Colonial Chrysler Corporation did not know or had no reason to believe that the automobile would be used in violation of state or federal liquor laws. The controlling question is whether or not the third condition applied to the claimant. Under the circumstances of the case, was the claimant required to make a "bootleg hazard" investigation?

The one circuit which has considered this question, the Fifth Circuit, determined that the provisions of 18 U.S.C.A. § 3617(b) (3) only apply to commercial transactions and not to the gratuitous loan of a vehicle. The result reached by this Circuit appears to be sound.

In United States v. One 1946 Mercury Sedan Automobile, D.C.N.D.Ga.1951, 100 F.Supp. 957, 960, 961, later affirmed by the Court of Appeals, Fifth Circuit, as United States v. Frank Graham Co., 5 Cir., 1952, 199 F.2d 499, the District Court gave several reasons why it was of the opinion that Congress intended the section in question to refer to commercial transactions and not to gratuitous loans. From the Committee Report of this Act, at pages 5 and 6 of the Report, the following is quoted:

"This last requirement is predicated upon the recognition of the 'bootleg hazard' as an element to be considered in investigating a person as a credit risk. As a matter of sound business practice, automobile dealers, finance companies, and prospective lien-holders on automobiles examine records, and make inquiry of references and credit rating agencies as to the owner's or prospective purchaser's reputation for paying his debts and his ability to do so. This subsection merely requires that in the making of such inquiry, the 'bootleg hazard' also be examined as one aspect of the credit risk."

Furthermore, the Court reasoned that the language in Subsection (b) (3) itself, would seem to negative the legislative intent to include gratuitous loans of vehicles:

"Such Subsection refers to 'the interest asserted by the claimant * * subject to any contract or agreement under which any person * * * has a right with respect to such vehicle.' It refers to such other person '[acquiring] his right under * * * contract or agreement,' and it requires that claimant show the making of inquiry prior to the transaction involved as to the other party,

in 'each locality in which the claimant has made any other inquiry as to the character or financial standing of such other person.' It is not likely that Congress intended to provide that the owner of an automobile before making a gratuitous loan of the same to another, particularly for a very short period of time, should first make inquiry at various police headquarters, nor be required to make inquiry as to the character or financial standing of such other person."

Finally the Court reasoned that the gratuitous loan of a vehicle to another did not vest in the borrower such a right, title or interest, as referred to in Subsection (3):

"A gratuitous loan is a bailment, the title remains in the lender, there is no title conveyed to the borrower which he may transfer, and unless definite time is specified the lender may retake possession when he wishes. 8 C.J.S., Bailments, § 1, page 222, et seq. True, the borrower (bailee) in many jurisdictions may institute actions against third persons interfering with his right of possession, but these actions are for the benefit of the bailor, and 'a mere gratuitous bailee cannot recover against a third person for the conversion of bailed property where the bailor or owner has intervened and asserted his rights thereto.' 8 C.J. S., Bailments, § 39, page 318."

See also United States v. One Studebaker Coupe, etc., D.C.W.D.Va.1941, 39 F.Supp. 250; United States v. One 1936 Model Ford, D.C.M.D.Ga.1944, 58 F.Supp. 802.

Likewise, in United States v. Rent-a-Car Service of Florida, 5 Cir., 1956, 239 F.2d 379 and Harris v. United States, 4 Cir., 1954, 215 F.2d 69 where courts found that the parties to a car rental agreement did not come within the spirit of the Act, or the legislative intent, or the end and purpose which Congress had in mind when the Act was passed, the primary application was determined to be toward those doing a banking or financ-

ing business involving chattel mortgages, conditional sales, or lending money with the vehicles as security for the loan.

Approving these reasons as set out above, this Court has concluded as a sound principle of law that when an automobile is seized while in possession of a gratuituos bailee, the claimant for remission is not required to comply with (b) (3) of the Statute, relating to "Bootleg Hazard" investigation. United States v. Frank Graham Co., 5 Cir., 1952, 199 F.2d 499; United States v. Dodd, 5 Cir., 1953, 205 F.2d 260; United States v. One 1952 Chevrolet Pickup Truck, D.C. S.D.Miss.1953, 111 F.Supp. 231.

Do the facts of the present case show a gratuitous bailment or a commercial transaction? Mr. Turner, agent and salesman for the Colonial Chrysler Corporation, testified that the vehicle was loaned to Mr. Quinn to drive while his vehicle was being repaired; he also testified, however, that it had been loaned partly so that Mr. Quinn might show the vehicle to a prospective buyer. Does this fact take the law out of the gratuitous bailment field and turn it into a commercial transaction?

The Court does not find any intent to pass any property interest in the vehicle to anyone at that time. Quinn was still, at most, a bailee, with title remaining in the lender, Colonial Chrysler Corporation. Since Quinn or the prospective buyer had not yet acquired any right with respect to the vehicle under a contract or agreement with the claimant, there was no duty to make the required investigation under Subsection (b) (3).

This finding that the presence of the prospective purchaser has no effect on the transaction is affirmed by United States v. One 1949 Chevrolet Pickup Truck, Motor No. AGCA 162576, D.C. S.D.Miss.1953, 111 F.Supp. 236. In that case the vehicle in question was loaned to the prospective buyer himself, pending the investigation as required under Subsection (b) (3). The truck was seized prior to the completion of the investigation and the District Court held that the agreement allowing the prospective buyer to try out the truck pending investigation was not a sale or contract to sell, but a mere loan, so that no duty was imposed on claimant to make the investigation before loaning the vehicle.

United States v. One Hudson Hornet Sedan, D.C.W.D.Va.1953, 110 F.Supp. 41, a case decided in this Court, is to the same effect. A contract of sale was entered into, but no assignment of title was made, and the Court found that the contract remained executory, title to the vehicle remained in the seller, and remission was granted to the claimant.

Mr. Turner further testified, on cross-examination by the Government, that loaning vehicles to persons while their vehicles were being repaired had become a necessary practice or part of their service. It is contended that in this respect the bailment has become one for the mutual benefit of the bailor and bailee. As our own Fourth Circuit declared in Harris v. United States, 4 Cir., 1954, 215 F.2d 69, 75:

"In such a bailment, 'the bailee acquires the right, as against the world, to hold and use the hired chattel during the time stipulated in the contract of hiring. His interest therefore is clearly a special property.' Dobie on Bailments and Carriers, § 48, p. 112."

This Court is of the opinion that this case does represent a bailment for the mutual benefit of bailor and bailee, and concurs with the Fourth Circuit that this bailment is within the *letter* of Subsection (b) (3). This Court further believes as the Fourth Circuit did regarding the U-Drive-It business, that the claimant in this case does not come under either the spirit of the Act or the legislative intent, or the end and purpose which Congress had in mind when the Act was passed.

There is nothing contained in this opinion to prevent forfeiture against an owner who makes a gratuitous loan of his vehicle where the owner has "any knowledge or reason to believe that it was being or would be used in the violation of laws of the United States or of

**40**

any State relating to liquor." § 3617(b) (2). There must be sufficient showing that the owner had no knowledge or reason to believe that it would be used in violating these laws. See Wright v. United States, 4 Cir., 1951, 192 F.2d 216; United States v. One 1937 Ford Truck, D.C.N.D.Ohio 1939, 29 F.Supp. 278; United States v. One 1936 Model Ford, D.C.M.D.Ga.1944, 58 F.Supp. 802.

In this case the conditions of Subsections (1) and (2) having been found to have been complied with as a matter of fact, and Subsection (3) having been found not to be applicable to this transaction, claimant is therefore entitled to remission, which is hereby ordered.